(Slip Opinion)

# Testimonial Immunity Before Congress of the Assistant to the President and Senior Counselor to the President

The Assistant to the President and Senior Counselor to the President is absolutely immune from compelled congressional testimony in her capacity as a senior adviser to the President.

July 12, 2019

LETTER OPINION FOR THE COUNSEL TO THE PRESIDENT

On June 26, 2019, the Committee on Oversight and Reform of the House of Representatives issued a subpoena seeking to compel Kellyanne Conway, Assistant to the President and Senior Counselor to the President, to testify on July 15. The Committee knew that the Executive Branch has long maintained that the President's senior advisers may not be compelled to appear before Congress, but the Committee issued the subpoena based upon its disagreement with that position. You have asked us to confirm that testimonial immunity applies here. As explained below, we conclude that Ms. Conway is absolutely immune from compelled congressional testimony in her capacity as a senior adviser to the President.

The Committee seeks Ms. Conway's testimony concerning claims by the Office of Special Counsel ("OSC") that she violated the Hatch Act in connection with media appearances and posts on her Twitter account. OSC has statutory authority to investigate violations of the Hatch Act, which bars federal employees from using their "official authority or influence for the purpose of interfering with or affecting the result of an election." 5 U.S.C. § 7323(a)(1). On May 29, 2019, OSC provided your office with a report concluding that Ms. Conway had "violated the Hatch Act by using her official position to influence the 2018 midterm elections and 2020 presidential election through both media appearances and social media." *Report of Prohibited Political Activity Under the Hatch Act*, OSC File Nos. HA-19-0631, HA-19-3395, at 4 (May 30, 2019) ("OSC Report"). On June 11, you responded by detailing a number of "grave legal, factual, and procedural errors" in the report and requesting that it be withdrawn. *See* Letter for Henry Kerner, Special Counsel, from Pat A. Cipollone, Counsel to the President at 1 (June 11, 2019) ("June 11 Cipollone Letter"). Two days later, OSC formally referred the report to the President, made the report public, and recommended that Ms. Conway be dismissed. The President did not accept OSC's recommendation.

1

On June 13, the Committee on Oversight and Reform invited Ms. Conway to testify. You declined that invitation based on the well-settled precedent, "consistently adhered to by administrations of both political parties," "for members of the White House staff to decline invitations to testify before congressional committees." Letter for Elijah E. Cummings, Chairman, Committee on Oversight and Reform, from Pat A. Cipollone, Counsel to the President (June 24, 2019). The Committee responded on June 26 by issuing the subpoena. Representative Elijah Cummings, the Committee's Chairman, characterized as "baseless" the Executive Branch's position that the President's senior advisers are "absolutely immune" from compelled congressional testimony, stating that "Congress has never accepted the claim that White House advisors are absolutely immune." Opening Statement, *Hearing on "Violations of the Hatch Act Under the Trump Administration"* at 2 (June 26, 2019) (internal quotation marks omitted).

This Office recently addressed in detail the testimonial immunity of senior presidential advisers in an opinion concerning the former Counsel to the President. Recognizing that the Executive Branch has invoked this immunity for nearly 50 years, we reaffirmed that "Congress may not constitutionally compel the President's senior advisers to testify about their official duties." *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. __, *1 (May 20, 2019) ("*Immunity of the Former Counsel*"). This testimonial immunity is rooted in the separation of powers and derives from the President's status as the head of a separate, co-equal branch of government. *See id.* at *3–7. Because the President's closest advisers serve as his alter egos, compelling them to testify would undercut the "independence and autonomy" of the presidency, *id.* at *4, and interfere directly with the President's ability to faithfully discharge his responsibilities. Absent immunity, "congressional committees could wield their compulsory power to attempt to supervise the President's actions, or to harass those advisers in an effort to influence their conduct, retaliate for actions the committee disliked, or embarrass and weaken the President for partisan gain." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach From Congressional Subpoena*, 38 Op. O.L.C. __, *3 (July 15, 2014) ("*Immunity of the Assistant to the President*"). Congressional questioning of the President's senior advisers would also undermine the independence and candor of executive branch deliberations. *See Immunity of the Former Counsel*, 43 Op. O.L.C. at *5–7.

Ms. Conway qualifies as a senior presidential adviser entitled to immunity. Our opinions have recognized that this immunity extends to "those trusted members of the President's inner circle 'who customarily meet with the President on a regular or frequent basis,' and upon whom the President relies directly for candid and sound advice." *Immunity of the Assistant to the President*, 38 Op. O.L.C. at *2 (quoting Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971)). After serving as the President's campaign manager in 2016, Ms. Conway joined the Administration as one of his principal advisers. *See, e.g.*, Michael D. Shear & Maggie Haberman, *Trump Rewards His Campaign Manager With Role of Counselor*, N.Y. Times, Dec. 23, 2016, at A16 (quoting the President-elect describing her as a "close adviser" and "part of my senior team"). Ms. Conway remains among the President's "closest" and "most senior" aides. *See* June 11 Cipollone Letter at 1, 3. We understand that she meets with the President on a daily basis and on a wide range of issues, including communications matters and various areas of domestic policy. She maintains an office in the West Wing, travels frequently with the President, and often speaks on television on his behalf. Ms. Conway participates in sensitive internal deliberations with the President and other top advisers on critical issues. As a member of the President's inner circle, she may not be compelled by a congressional committee to testify about matters related to her official duties. *See Immunity of the Former Counsel*, 43 Op. O.L.C. at *1, *21.

The subject of the subpoenaed testimony plainly concerns Ms. Conway's official duties. The OSC Report claims that her public statements on television and social media amounted to the use of her "official authority or influence" to affect an election within the meaning of the Hatch Act, 5 U.S.C. § 7323(a)(1). *See* OSC Report at 2, 6. The very premise of the report is that Ms. Conway's public statements arose in the course of her official duties. *Id.* at 6 (claiming that she gave the interviews in question "in her official capacity," "[c]onsistent with her duties in the Administration"); *id.* at 14 (claiming that "the bulk of the" Twitter posts "were related to her official duties"). Whether or not OSC was correct in believing that Ms. Conway used "official authority or influence" in violation of the Hatch Act, there is no question that the Committee seeks Ms. Conway's testimony in connection with matters related to her White House duties.

Although Chairman Cummings has stated that the Committee wishes to question Ms. Conway about her public statements on television and social media—rather than her confidential communications with the President—that distinction does not bear upon the applicability and purpose of Ms. Conway's immunity. In contrast with the doctrine of executive privilege, testimonial immunity is based upon the role of the White House official, not the confidentiality of the particular communications at issue. *See Immunity of the Former Counsel*, 43 Op. O.L.C. at *4. While the immunity in part serves the confidentiality interests of the President, it more fundamentally protects the independence and autonomy of the office. *See id.* at *4, *17. Therefore, the Committee's interest in questioning Ms. Conway about public, rather than confidential, matters is not material to the applicability of the immunity itself.

Nor does the Committee's stated interest in allegations concerning potential Hatch Act violations affect the applicability of testimonial immunity. Congress frequently claims an interest in investigating allegations of official impropriety, yet the Executive Branch has never suggested such an interest negates testimonial immunity. To the contrary, the White House has repeatedly invoked immunity in such cases. *See, e.g.*, *id.* at *10 (discussing a White House Counsel's refusal to testify about corruption allegations against a cabinet officer); *id.* at *11 (discussing a former White House Counsel's refusal to testify about U.S. attorney resignations in 2007). And in 2014, this Office specifically advised that testimonial immunity would apply in response to a subpoena issued by the Committee concerning potential Hatch Act violations. *See Immunity of the Assistant to the President*, 38 Op. O.L.C. at *1, *12. Testimonial immunity would provide scant protection if it gave way whenever a congressional committee attempted to compel testimony based on claims of improper or unlawful activity by those advisers or other executive branch officials.

We conclude that Ms. Conway may not be compelled to testify before the Committee on Oversight and Reform about the allegations in OSC's report. The President may lawfully direct her not to appear on July 15, and she may not be penalized for following such a direction. *See Immunity of the Former Counsel*, 43 Op. O.L.C. at *19–21.

STEVEN A. ENGEL
*Assistant Attorney General*
*Office of Legal Counsel*